for 2363-25 United States vs. Ogidi.  Good morning, Your Honors. May it please the Court. Kolecki Ogidi possessed a gun inside a home. Possessing a gun at home is at the core of the Second Amendment. But because Mr. Ogidi had served a year in jail as a minor for two felony convictions, he was prosecuted for having that gun. There's no historical tradition of permanently depriving someone of their Second Amendment rights because of their teenage rap sheet. This Court should find that Section 922G1 is unconstitutional, at least as applied to Mr. Ogidi. I thought his challenge was finished. It's both, Your Honor. Okay. Did he raise it below? We did not, Your Honor. All right. So it's a clear error question. It's a plain error question, Your Honor. All right. How do we . . . One of the things I started struggling with, we say that summary orders aren't precedential, but we don't typically feel licensed to rewrite the script in the face of summary order. And it seems as though this Court, twice in the last year, has concluded that a plain error challenge like this isn't something . . . isn't a ground for relief. What distinguishes this case from the ones in which we said that? So I believe there's just one that squarely addresses Bruin. That's Brillian. Brillian. Yeah. And if Your Honor tells me the other one you're thinking of, I can address that as well. But that case was only a facial challenge, at least as the summary order reads. Here we are raising both. And so there is no bar, both formally because it's a summary order, but also as just a matter of deference to the other court to deciding the issue here. Here we're raising both the facial and as-applied challenge. And that's something that other circuits are doing. Just last week, the Ninth Circuit held an as-applied challenge that somebody with five felony convictions, that 922 G1 was unconstitutional as applied to that person. And in that case, the issue also wasn't raised below. Here we have new controlling Supreme Court precedent that this court should apply to Mr. Ogedi's case. And that should apply even in the plain error context because Bruin is clear that this new historical tradition rule needs to be followed and that it is different than what came before. The other thing that Bruin is clear about is that it's the government's burden to show that there is this long-standing historical tradition of taking away gun rights from someone in Mr. Ogedi's situation. And Mr. Ogedi has felony convictions only from when he was 16 and 17 years old. There is no... In England. Yeah, I just find, with all due respect to the high court in Bruin, this is a suit of armor for a 20th century problem. But in any event, that's not your fault. They gave you Bruin and you're going to run with it and I don't blame you. But I mean, this young fellow has a felony conviction. And the question is, is it clear that he didn't raise it below when Bruin was around and circulating and he was charged with felony possession, right? Well, Bruin actually was decided after he was charged, which may put him... After he was charged. How about before he was convicted? Right, it's in between there, which I think is the same as in the Ninth Circuit case, Duarte, where it was after the indictment. I get real nervous about following the Ninth Circuit. It's not just the Ninth, Your Honor. It's also the Third. It's also the Fifth. The Seventh Circuit hasn't ruled in favor of a defendant yet, but recently in United States v. Gay, the Seventh Circuit explained... Do you think Rahimi will give us some sense of the court's view of this? Well, your guess is as good as mine, Your Honor. It's possible Rahimi is about a different subsection, of course, of 922G. So while the Supreme Court could make an expansive ruling, often courts are reticent to do that. Well, in Heller and McDonald, both of whom I have some familiarity with, Justice Scalia assured us that longstanding statutes like felony possession and other statutes were going to be reached by this, this right to defend oneself, which started out in the home and has now moved out onto Second Avenue. Shouldn't we look to that and think about that and wait and see what Rahimi tells us? Whether they're going to walk back from that or whether they're going to explain more about what they meant? Well, let me answer the substantive portion first, Your Honor, if I may, as far as what Heller and McDonald said about longstanding statutes. Bruin changed the analysis in that it explained that longstanding did not mean, say, 1960 when the first felon in possession... Or the hundred years that the Sullivan Law had been in effect in the state of New York. So longstanding means the 1700s. And now when we're looking to the 1700s, it's a different analysis. So that dicta in Heller and McDonald, which was not necessary to the decision in the case because those cases just simply did not raise this issue, can only be looked at when also looking at Bruin, which, you know, for better or worse... So the mores and the understanding of reasonable government intrusion from the 18th century now define the 21st century reality of a society in which 310 million firearms exist in a country of the same number. The Supreme Court has taken a strong stance on the Second Amendment and the problem of guns and crimes and people who have committed a crime and have a gun is not a new one. So Bruin does have a separate analysis if there is a new technology or some modern aspect of the case that is different. That gives the government a little bit more wiggle room, but not that much. But here... I mean, this area of law right now is unsettled. Is that a fair characterization? It is evolving. I think that we... But that is true with the law in general. We had a new Supreme Court case come down in Bruin about two years ago. Cases are going to keep happening. And the courts of appeal are trying to figure it out. And, you know, I think that makes it hard to say under plain error. Well, but the Ninth Circuit just did. So they used a little bit of a different... They didn't quite do it under plain error because there's apparently a circuit split among plain error and the good cause under Rule 12b, which I didn't raise, but just so that we're on the same page. But in the Ninth Circuit, they did rule for the defendant, even though it had not been raised below. Bruin is... It's just a new case that this court has to follow. And the Seventh Circuit essentially said the same thing in first Atkinson and then Gay. They haven't ruled, you know, in the favor of a defendant. But they have said that this is a law that we have to apply now. It's not something that can just be... Understood. You're running low on time. So why don't you take a few minutes to address the other arguments? Thank you, Your Honor. Mr. Ogedi's sentence was also unreasonably long. He received a 51-month sentence consecutive to his anticipated state sentence. That meant he did not get credit from the federal court for his time at MDC, which is really a place, as I know, Your Honors, know, that has horrific conditions and that courts across the districts are taking into serious account in reducing sentences. Can you help me understand? I'm still sentencing. I thought I understood the district court to say, look, I think you're going to get credit for your state sentence for that time. And if you don't, come back and I'll entertain a compassionate release motion. That's right. In that he will technically get the days he spent at MDC counted towards his state sentence. But federal courts in the Southern and Eastern District have really been taking into account that time at MDC is worse and serves, it's just worse for the person, so it serves the goals of deterrence and punishment. And those sentencing goals with less time than ordinarily you would think of it as counting for. And do you read the district court as not having taken that into account? Yes, Your Honor. I read the district court as just kind of discounting that time as going towards the state sentence, but at the same time, really taking into account the fact that there were these pending state charges as a reason to give Mr. Ogidi more time. And those two things together, I think this court should find troubling. The lack of, benefit is the wrong word, but mitigating factor from this horrific time at MDC, coupled with the court relying on the pending charges to give a greater sentence. Mr. Ogidi's possession of a gun was not aggravated in any way. It was the most basic type of gun possession inside the home of a small gun. He was an extremely young man, only 20 years old, and he had lived a life that was full of trauma. He was the sort of person that really deserved mitigation and compassion by the judge, which was not what we found here. Thank you, counsel. Thank you, Your Honor. We have a few minutes for rebuttal. Good morning, Your Honors. May it please the court. My name is Ben Klein. I'm an assistant United States attorney. I represent the government in this appeal. I was also counsel in the district court below. This court should affirm the judgment of the district court as set out in our brief. The defendant's Bruin-based challenge to the constitutionality of Section 922G1 is without merit and certainly fails to meet the high bar for plain error review. This court should also reject the defendant's challenge to the substantive reasonableness of his below-guideline sentence. The record here shows that Judge Seibel considered the various mitigating factors that the defendant cites in his brief, including his age, upbringing, and conditions of confinement. After doing so, she imposed a sentence that is more than 25% below the very bottom end of the guideline's range. Under this court's precedence, the defendant's disagreements and how the district court weighed the Section 3553A factors is not a basis for disturbing the court's sentence. If the court has any questions, I'm happy to answer them. Otherwise, we'll rest on our papers. Thank you, counsel. Thank you very much. It's the government's burden here under the Second Amendment, and I think that that's something that's crucial to the court's analysis that Bruin made plain that it's the government's burden to point to the historical tradition, and specifically one that addresses Mr. Ogidi's individual circumstances in an as-applied challenge. And they haven't done that. They've pointed to isolated laws that are not permanent bans on possessing a gun. They've pointed to race- or religion-based laws that also were not ones that are encoded into our Constitution, in fact, would be unconstitutional today, and were not permanent bans. They just haven't met their burden. And I know that it's difficult to make a decision when the law is changing, and in particular, to make one in Mr. Ogidi's favor. Well, especially on plenary review, right? I mean, that complicates things. But the Ninth Circuit just did the same thing on a case where it was unpreserved. This is a constitutional right. It's the sort of right that it's different than other sort of plain-error reviews, and that it's the sort of right that you can raise in an appeal, even though you don't raise it below. You can raise it despite a guilty plea. And that, I think, is a recognition that these rights are different than other sort of claims. With respect to Mr. Ogidi's sentencing, I know also that it's a high bar for this court to send back a sentence as unreasonable. But here we have a number of factors that really make it so. It shouldn't be enough to just sort of have lip service to his traumatic upbringing. He was basically kidnapped by his father, taken to Nigeria, where he was physically abused by other family members. He didn't have a chance. He was a young man who made a mistake, who is now serving a very long sentence for that error. And that was too long for Mr. Ogidi. Thank you. Thank you, counsel. We'll take the case under advisement.